UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

05 10025 MEL

| | |
|---|---|
| TUDOR INSURANCE COMPANY<br>**Plaintiff**<br><br>vs.<br><br>HOYT CORPORATION<br>and DEAN S. PLASKETT, ESQ., as he is<br>Commissioner of the Department of Planning<br>and Natural Resources for the Territory<br>of the United States Virgin Islands and Trustee<br>of resources of the Territory of the United States<br>Virgin Islands<br><br>**Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MAGISTRATE JUDGE RBC

RECEIPT # 61250
AMOUNT $150
SUMMONS ISSUED YES
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. Tom
DATE 1/6/05

## COMPLAINT FOR DECLARATORY RELIEF
## AND CLAIM FOR JURY TRIAL

### Nature of Action

1.  This Complaint is a request for a judgment declaring that certain insurance policies that Tudor World Insurance Company ("Tudor") issued to defendant, Hoyt Corporation ("Hoyt") do not require Tudor to provide defense or indemnity to Hoyt for any costs which Hoyt may incur by reason of a letter dated September 1, 2004 forwarded to it by Dean S. Plaskett, Esq. ("Plaskett"), as Commissioner of the Department of Planning and Natural Resources for the Territory of the United States Virgin Islands and Trustee of resources of the Territory of the United States Virgin Islands

### Jurisdiction and Venue

2.  This Court has jurisdiction over this matter under 28 U.S.C. sec. 1332 in that it arises between citizens of different states and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

3.  Venue is proper in this district under 28 U.S.C. sec. 1391(a)(2) and (b)(2) as this action concerns an insurance policy issued to Hoyt Corporation, which is a Massachusetts corporation with a principal place of business in Westport, Massachusetts.

### Parties

4.  Tudor Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire with a principal place of business in Franklin Lakes, New Jersey.

5. Hoyt Corporation, ("Hoyt") is a Massachusetts corporation with a principal place of business at 251 Forge Road, Westport, Bristol County, Commonwealth of Massachusetts.

6. Upon information and belief, Dean S. Plaskett, Esq. ("Plaskett") is a resident of the Territory of the United States Virgin Islands and at all times relevant hereto was Commissioner of the Department of Planning and Natural Resources for the Territory of the United States Virgin Islands and appointed Trustee of resources of the Territory of the United States Virgin Islands pursuant to 42 U.S.C. § 9607(f) and 40 C.F.R. Subpart G .

## Background

7. Tudor issued policy number GLO 000-3046, effective 2/20/03-2/20/04 and policy number GLO 000- 3656, effective 2/20/04-2/20/05 to Hoyt (collectively "the policies"). True and correct copies of the policies are attached hereto as Exhibit "A" and "B."

8. By letter dated September 1, 2004, Plaskett advised Hoyt that it is potentially responsible for damages to natural resources resulting from hazardous substances, pollutants and/or contaminants that have been released into the environment from the former Laga facility, located in St. Thomas, United States Virgin Islands, and that it intends to bring suit against Hoyt to recover natural resource damages pursuant to the Comprehensive Environmental Response, Compensation and Liability Act or 1980, as amended ("CERCLA") and other applicable Federal and Territorial law.   A true and correct copy of this letter is attached hereto and marked Exhibit "C."

9. Tudor has advised Hoyt that it has no duty to defend or duty to indemnify Hoyt for the claims made in the letter from Plaskett to Hoyt referred to in the preceding paragraph based upon the terms and conditions of the Polices.

10. The Policies do not provide coverage for the defense of Hoyt for the claims made by Plaskett as Commissioner of the Department of Planning and Natural Resources for the Territory of the United States Virgin Islands and appointed Trustee of resources of the Territory of the United States Virgin Islands and do not require Tudor to indemnify Hoyt for any liability or costs that Hoyt may be required to pay the Territory of the United States Virgin Islands because of applicable and controlling language and exclusions contained in the Policy.

## COUNT I

11. Tudor realleges and incorporates by reference its allegations in paragraphs one (1) through ten (10) of this Complaint.

12. The following relevant provisions appear in the Policies;

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage, Read the entire policy to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a

Named Insured under the policy. The words, "we," "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

### SECTION I – COVERAGES
### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
**1. Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit: that may result. But:

    (1) The amount we will pay for damages is limited as described in Section III-Limits of Insurance; and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments-Coverages A and B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" or "property damage" occurs during the policy period.

13. In addition to the provisions set forth in the preceding paragraph, the Policies include an endorsement, which states as follows:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY,

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

...

Exclusion f. under paragraph 2., Exclusions of COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is replaced by the following:

This insurance does not apply to:

f.  (1)  "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

   (2)  Any loss, cost or expense arising out of any:
      (a)  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants;  or
      (b)  Claim or "suit" by or an behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste.  Waste includes material to be recycled, reconditioned or reclaimed.

14. By reason of the foregoing provisions and the Total Pollution Exclusion in the Policies, there is no coverage for indemnity or defense under the Policies for the claims made against Hoyt by Plaskett, as Commissioner of the Department of Planning and Natural Resources for the Territory of the United States Virgin Islands and appointed Trustee of resources of the Territory of the United States Virgin Islands in a letter dated September 1, 2004 to Hoyt.

15. By reason of the foregoing provisions, Tudor lacks any obligation to any of the defendants in this action in connection with the claims asserted by Plaskett, as Commissioner of the Department of Planning and Natural Resources for the Territory of the United States Virgin Islands and appointed Trustee of resources of the Territory of the United States Virgin Islands.

WHEREFORE, the plaintiff, Tudor Insurance Company, requests a judgment declaring as follows:

   a.  That under the Policies, Tudor Insurance Company is not required to provide Hoyt Manufacturing Corporation with a defense to the claims asserted by Plaskett, as Commissioner of the Department of Planning and Natural Resources for the Territory of the United States Virgin Islands and appointed Trustee of resources of the Territory of the United States Virgin Islands as set forth in a letter dated September 1, 2004 from Plaskett to Hoyt;

b. That under the Policies, Tudor Insurance Company is not required to indemnify Hoyt Manufacturing Corporation for any liability or costs that Hoyt may be required to pay the Territory of the United States Virgin Islands as claimed in a letter dated September 1, 2004 from Plaskett to Hoyt;

c. That Tudor Insurance Company has no obligation to any of the defendants in this action in connection with the claims asserted

d. That Tudor Insurance Company be awarded all other relief allowed by law or in equity which the Court deems appropriate and just.

## THE PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Dated: Jan. 5, 2005

Tudor Insurance Company,
By Its Attorneys,

THOMAS B. FARREY, III 459880
BROOKE P. SELIGER 550947
BURNS & FARREY
446 Main Street, 22nd Floor
Worcester, MA 01608
Telephone No.: (508) 756-6288

TU14cp.3

EXHIBIT A



COMMERCIAL GENERAL LIABILITY POLICY

STOCK COMPANY

**No. GLO 000-3046**
**NEW**
REPLACEMENT OF NUMBER



# TUDOR
## INSURANCE COMPANY
### KEENE, NEW HAMPSHIRE

400 PARSON'S POND DRIVE
FRANKLIN LAKES, NJ 07412-2600

## DECLARATIONS

Named Insured and Mailing Address: (No., Street, City, State, Zip Code)

Hoyt Corporation; Forge Road Realty Trust; Hoyt Manufacturing
251 Forge Road
Westport, MA 02790

The named insured is:

☐ Individual
☐ Partnership
☒ Corporation
☐ Other _____

Policy Period: (Mo./Day/Yr.)

| From | to | 12:01 A.M., standard time at your mailing address shown above. |
|---|---|---|
| February 20, 2003 | February 20, 2004 | |

Business Description: Mfg. of commercial washers and dryers.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000 |
| Products - Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Fire Damage Limit | $ | 50,000 Any One Fire |
| Medical Expense Limit | $ | EXCLUDED Any One Person |

### PREMIUM

| Classification | Code No. | Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| | | | | | | |

See Earned Premium and Composite Rate Endorsement (GO-0011).

Advance Premium $

### FORMS AND ENDORSEMENTS

Forms and Endorsements applying to this policy and attached at time of issue:
Common Policy Conditions (GO-0026), Nuclear Energy Exclusion (GO-0027),
CG-0001 (07/98), GO-0006 (06/96), GO-0011 (06/96), GO-0012 (06/96),
GO-0019 (06/96), GO-0057 (06/97), GO-0064 (08/98), GO-0075 (06/02),
GO-0076 (03/01), GO-0078 (03/01), GO-0079 (03/01), GO-0084 (08/01),
CG-2010 (10/93), CG-2015 (11/88), CG-2135 (10/93), CG 2149 (10/93),
CG-2169 (01/02), CG-2243 (01/96).

**TOTAL ADVANCE PREMIUM**

$ 49,500

Countersigned:

By _Donna M. Govern_

Assistant Vice President
Authorized Representative

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

3/12/03 - pg

GO-0028 (Ed. 6/96)

05/14/2003 04:36 PM

# COMMON POLICY CONDITIONS

## All Coverage Forms included in this policy are subject to the following conditions.

**A.   CANCELLATION**

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a.   10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b.   30 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation. The policy period will end at 12:01 a.m. on that date.

5.  If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.   CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C.   EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D.   INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1.   Make inspections and surveys at any time;

2.   Give you reports on the conditions we find; and

3.   Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1.   Are safe or healthful; or

2.   Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E.   PREMIUMS**

The first Named Insured shown in the Declarations:

1.   Is responsible for the payment of all premiums; and

2.   Will be the payee for any return premiums we pay.

**F.   TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by **our** authorized representative.

*Stephen A Cohen*
*Secretary*

*Andrew S Fraser*
*President*

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
*Copyright, Insurance Services Office, Inc. 1985.*

GO-0026 (06/96)

 

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)
This endorsement modifies the provisions of this policy.

It is agreed that:

I.  This Policy does not apply:
- A.  Under any Liability Coverage, to **bodily injury or property damage**
    1.  with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or
    2.  resulting from the **hazardous properties of nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
- B.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties of nuclear material** and arising out of the operation of a **nuclear facility** by an person or organization.
- C.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if
    1.  the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;
    2.  the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or
    3.  the **bodily injury** or **property damage** arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

II.  As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties;

"**nuclear material**" means **source material**, **special nuclear material** or **byproduct material**;

"**source material**," "**special nuclear material**," and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

"**waste**" means any waste material (1) containing **by product material** and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

"**Nuclear facility**" means
- (a)  any **nuclear reactor**,
- (b)  any equipment or device designed or used (1) **separating the isotopes** of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**,
- (c)  any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
- (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable materials;

"**property damage**" includes all forms of radioactive contamination of property.

*Includes copyrighted material of Insurance Services Office, with its permission.*
*Copyright, Insurance Service Office, Inc. 1985.*

GO-0027 (06/96)



CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II—Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V—Definitions.

## SECTION I—COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverage A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)** The "bodily injury" or "property damage" occurs during the policy period.

**c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

        **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:


Copyright, Insurance Services Office, Inc., 1997

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other op-

CL 137 (7-98)



erating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a government authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

 

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III—Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III—Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

CL 137 (7-98)



No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A and B.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**b.** Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a.** To any insured.

**b.** To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c.** To a person injured on that part of premises you own or rent that the person normally occupies.

**d.** To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury"

are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS—COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the

liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of Section I—Coverage A—Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damages" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary liti-

CL 137 (7-98)

gation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

## SECTION II—WHO IS AN INSURED

1. If you are designated in the Declarations as:

   **a.** An individual, you and your spouse are insured, but only with respect to the conduct of a business of which you are the sole owner.

   **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a

consequence of paragraph **(1)(a)** above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the, care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", any, partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

   **c.** Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

   **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

CL 137 (7-98)

Page 7 of 13

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain owner- ship or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

   No person or organization is an insured with re- spect to the conduct of any current or past part- nership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

### SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declara- tions and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except dam- ages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products- completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Cover- age B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property dam- age" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sus- tained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obliga- tions under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written no- tice of the claim or "suit" as soon as practi- cable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any de- mands, notices, summonses or legal pa-

pers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion g. of Section I — Coverage A—Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

 

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured

shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V—DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:



**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

CL 137 (7-98)

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and

waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall

CL 137 (7-98)



be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) You;

      (2) Others trading under your name; or

      (3) A person or organization whose business or assets you have acquired; and

   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

CL 137 (7-98)



# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### DEADUCTIBLE ENDORSEMENT
### DEFENSE COSTS AND EXPENSES CONTRIBUTING TO DEDUCTIBLE LIMIT

In consideration of the premium charged, it is agreed that such coverage as is afforded by this policy shall be in excess of $10,000 deductible each "occurrence," for any "occurrence" that would otherwise be covered on a primary basis.

Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal Injury Liability and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount stated above as applicable to such coverages. The limits of insurance applicable to each "occurrence" for such coverages will be reduced by the amount of such deductible. Aggregate limits for such coverages shall not be reduced by the application of such deductible amount:

The deductible amount stated above applies under Bodily Injury Liability, Property Damage Liability, Personal Injury Liability and Advertising Injury Liability Coverage combined to all damages because of "bodily injury," "property damage," "personal injury" and "advertising injury" as the result of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages because of that "occurrence."

All costs and expenses payable under the Supplementary Payments section of the Coverage Form shall contribute to the exhaustion of the stated deductible amount and such costs and expenses shall be entirely borne by the insured.

The terms of this insurance, including those with respect to:

    **(a)**    Our right and duty to defend any "suits" seeking damages; and

    **(b)**    Your duties in the event of an "occurrence," "claim," or "suit";

apply irrespective of the application of the deductible amount.

It is further agreed that the Company shall not be obligated to advance any amounts within the deductible that the insured may be legally obligated to pay. However, we may pay any part or all of the deductible amount to effect settlement of any "claim," "suit" or expense and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

GO-0006 (06-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY,** forms a part of the policy to which it is attached.

## EARNED PREMIUM AND COMPOSITE RATE

In consideration of Tudor Insurance Company's acceptance of this insurance, the Named Insured hereby agrees that the minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

1.  The minimum earned premium due if this policy remains in effect for 90 days or less shall be twenty-five percent (25%) of the amount entered as ADVANCE PREMIUM on the Declarations page of this policy.

2.  In the event of cancellation of this policy by the Named Insured after this policy has been in effect for more than 90 days, the return premium due, if any, shall be computed at a rate equal to ninety percent (90%) of the pro-rata unearned policy premium, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

3.  Failure by the Named Insured to remit premium payments when due shall be considered a request by the Named Insured for the Company to cancel this policy, and the minimum earned premium due the Company shall be computed in accordance with either paragraph 1 or 2 above, as the case may be.

4.  In the event of cancellation of this policy by the Company for reasons other than nonpayment of premium, the earned premium for this policy shall be computed on a pro-rata basis, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

5.  The premium entered on the Declarations page of this policy as ADVANCE PREMIUM is a provisional premium only and is subject to adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect but may be done by the Company while the policy is in effect. Premium Audit Adjustment calculations will be made to determine additional premiums only. The Named Insured agrees that there will be no downward adjustments of the ADVANCE PREMIUM resulting from the Premium Audit provisions of this policy.


05/14/2003 04:37 PM



6.  The amount entered as ADVANCE PREMIUM on the Declarations page of this policy has been computed on a composite rate basis for both "bodily injury" and "property damage" as follows:

| Exposure Basis | Estimated Exposure | x | Composite Rate | = | ADVANCE PREMIUM |
|---|---|---|---|---|---|
| Gross Sales | $3,500,000 | X | $14.14 | = | $49,500 |

If the Exposure Basis is Payroll, then the Composite Rate shall be applied per thousand dollars of Payroll.  If the Exposure Basis is Gross Sales, then the Composite Rate shall be applied per thousand dollars of Gross Sales.

GO-0011 (06/96)                     Page 2 of 2

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## DEFINITION OF GROSS SALES

1. **Definition**

   The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:

   a.   All goods or products sold or distributed during the policy period;

   b.   Operations performed during the policy period; and

   c.   Rentals during the policy period;

2. **Inclusions**

   The following items shall not be deducted from gross sales as determined above:

   a.   Foreign exchange discounts;

   b.   Freight allowance to customers;

   c.   Total sales of consigned goods and warehouse receipts;

   d.   Trade or cash discounts;

   e.   Bad debts; and

   f.   Repossession of items sold on installments (amount actually collected).

3. **Exclusions**

   The following items shall be deducted from gross sales:

   a.   Sales or excise taxes which are collected and submitted to a governmental division;

   b.   Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;

   c.   Finance charges for items sold on installments;

   d.   Freight charges on sales if freight is charged as a separate item on customer's invoice; and

   e.   Royalty income from patent rights or copyrights which are not product sales.

GO-0012 (06-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## SERVICE OF "SUIT" CLAUSE

It is agreed that service of process in any "suit" on this policy against Tudor Insurance Company may be made upon the highest one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the state or commonwealth wherein this policy is delivered or issued. The one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the state or commonwealth where this policy is delivered is hereby authorized and directed to accept service of process on behalf of this Company in any such "suit"; provided such Commissioner, Director, or Superintendent has a procedure for forwarding "suits" to insurance companies by registered or certified mail and agrees to abide by such procedure by mailing via certified mail all documents so served to Mr. Andrew Frazier, Tudor Insurance Company, 400 Parson's Pond Drive, Franklin Lakes, New Jersey 07417-2600.

It is further agreed that the Insured shall, by registered mail, send to Mr. Andrew Frazier, Tudor Insurance Company, 400 Parson's Pond Drive, Franklin Lakes, New Jersey 07417-2600, a copy of all documents relating to the service of process and "suit" as the Insured has delivered to the highest one in authority of the Insurance Department of the state in which the "suit" has been instituted.

GO-0019 (06-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## SILICON DIOXIDE (SILICOSIS) EXCLUSION

In consideration of the premium charged, it is agreed that the following exclusion is added to the policy:

(1) Any liability for "property damage," "personal injury," "advertising injury," "bodily injury," sickness, disease, occupational disease (including, buy not limited to "silicosis"), disability, shock, death, mental anguish and mental injury, which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape, contact with or inhalation of "silicon dioxide" or any materials containing "silicon dioxide."

(2) Any loss, cost or expense arising out of any "claim" or "suit" by or on behalf of a governmental authority for damages arising out of the monitoring of, clean-up of, removal of, containing of, treatment of, detoxification of, neutralization of, manufacture of, mining of, use of, sales of, installation of, distribution of, or exposure to "silicon dioxide."

"Silicon dioxide" means "silicon dioxide" or a chemical formulary which is a "silicon dioxide" derivative or which has a like formulation, structure or function.

"Silicosis" means a pneumoconiosis caused by inhalation of the dust or stone, sand or flint containing "silicon dioxide" characterized by generalized nodular fibrotic changes in the lungs, and, in more advanced stages, conglomerate fibrosis resulting in severe shortness of breath, cough and/or sputum.

All other terms and conditions remain unchanged.

GO-0057 (06-97)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION ENDORSEMENT

It is agreed that this policy shall not apply to any liability arising out of "Aircraft Products and Completed Operations" or reliance upon any representation or warranty made with respect thereto, nor to any liability arising out of the "Grounding" of any aircraft.

"Aircraft Products and Completed Operations" means:  (1) Aircraft (including missiles or spacecraft and ground support or control equipment used therewith) and any other goods or products manufactured, sold, handled or distributed by any Insured for any services provided or recommended by any Insured or by others trading under his name for use in the manufacture, repair, operation, maintenance or use of any aircraft, and (2) any articles, furnished by any Insured and installed in aircraft or used in connection with aircraft or for spare parts for the aircraft, including ground handling tools and equipment, and also means training aids, instruction manuals, blueprints, engineering or other data, engineering or other advice, and labor relating to such aircraft or articles.

"Grounding" shall mean the withdrawal of one or more aircraft from the flight operations or the imposition of speed, passenger, or load restriction on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft of any part thereof sold, handled or distributed by any Insured or manufactured, assembled or processed by any other person or organization according to the specifications, plans, suggestions, orders, or drawings of any Insured whether such aircraft so withdrawn are owned or operated by the same or different persons, organization, or corporation.

GO-0064 (06-98)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## <u>LEAD CONTAMINATION EXCLUSION</u>
### (CONTRACTING)   (Except NH)

This insurance does not apply to:

(a)     "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

(b)     "Property Damage" arising from any form of lead;

(c)     Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

(d)     Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

All other terms and conditions remain unchanged.

GO-0075 (06/02)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### EXCLUSION FOR CERTAIN BUSINESS/MARKETING CONDUCT

In consideration of the premium charged, it is hereby understood and agreed that the insurance under this policy DOES NOT APPLY to claims and/or liability arising out of the following conduct in the course of any insured's business and/or marketing activities:

(1)     Any invasion of, infringement or intrusion upon, or interference with any person's right of privacy or publicity, including but not limited to presentation of such person in a false light, unwarranted or wrongful publicity, public disclosure of private facts, and commercial appropriation or use of such person's name, signature, photographic license, likeness and/or statements by or about him or her or attributed to him or her without such person's permission, and

(2)     Any misappropriation, infringement, or unauthorized use of any name, trademark, copyright, trade name, trade dress, service mark or service name, advertising idea, style of doing business, title, slogan, format, idea, character, character name, characterization, plot, musical composition, performance, logo, art work, graphic representation, photographic, or other similar concept, practice, or design.

All other terms and conditions remain unchanged.

GO-0076 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## EMPLOYMENT RELATED PRACTICES EXCLUSION

This insurance does not apply to "Bodily Injury" arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(4) Consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

GO-0078 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## ASBESTOS EXCLUSION

This insurance does not apply to any liability for "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time arising out the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of such "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time as a result of the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust.

GO-0079 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## MOLD, SPORES AND/OR FUNGUS LIABILITY EXCLUSION

This insurance does not apply to "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" for which any "named insured" or "insured" under this policy may be held liable arising out of the actual or threatened occurrence, growth, release, transmission, migration, dispersal or exposure to "Mold," "Spores" and/or "Fungus;"

(a)     including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any actual or threatened exposure to, inhalation, absorption or ingestion of, or physical contract with "Mold," "Spores" and/or "Fungus;"

(b)     including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any actual or threatened "Mold," "Spores" and/or "Fungus;" upon any real property or personal property, product or work, premises, site or location, or any other tangible property, of any "named insured" or "insured" or any other person(s) or organization(s), located anywhere in the world;

(c)     including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any loss, cost or expense for any testing, monitoring, clean-up, treatment or removal, or neutralization of "Mold," "Spores" and/or "Fungus;"

"Mold," "Spores" and/or "Fungus means any mold, spores and/or fungus of any type or nature whatsoever that can cause or threaten harm to any living organism (including human health or human welfare, or the health or welfare of any animal or plant) or can cause or threaten physical damage, deterioration, loss of use, and/or loss of value or marketability, to any tangible property whatsoever. This includes, but is not limited to, any type(s) of mold, spores and/or fungus that are harmful or potentially harmful to health or welfare (such as Stachbotrys and others), or that are damaging or potentially damaging to tangible property (such as wet or dry rot, mildew and others) or that can otherwise cause or threaten to cause "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" of any kind whatsoever.

GO-0084 (08/01)

CL 690
(10-93)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 20 10 10 93

## ADDITIONAL INSURED—OWNERS, LESSEES OR CONTRACTORS (FORM B)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective February 20, 2003        12:01 A.M. standard time | Policy No.        GLO 000-3046 |
|---|---|
| Named Insured Hoyt Corporation, et al. | Countersigned by |

(Authorized Representative)

### SCHEDULE

**Name of Person or Organization:**

See Below

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Any Person or organization that is an owner of Real Property or Personal Property on which you are performing operations, or a contractor on whose behalf you are performing operations, and only at the specific written request of such person or organization to you, wherein such request is made prior to commencement of operations, and for which a certificate of insurance naming such person or organization as additional insured is on file with Tudor Insurance Company.



Copyright, Insurance Services Office, Inc., 1992

CL 532
(11-88)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 20 15 11 88

# ADDITIONAL INSURED—VENDORS

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

Policy Number:

Name of Person or Organization (Vendor):

### GLO 000-3046

Your Products:

### All vendors of the Named Insured

### All products manufactured or sold by the Named Insured

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

1. The insurance afforded the vendor does not apply to:

    a. "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

    b. Any express warranty unauthorized by you;

    c. Any physical or chemical change in the product made intentionally by the vendor.

    d. Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    e. Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the distribution or sale of the products;

    f. Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    g. Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

2. This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.



Copyright, Insurance Services Office, Inc., 1986, 1988

CL 683
(10-93)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 21 35 10 93

## EXCLUSION—COVERAGE C—MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective February 20, 2003    12:01 A.M. standard time | Policy No.    GLO 000-3046 |
|---|---|
| Named Insured Hoyt Corporation, et al. | Countersigned by |

(Authorized Representative)

### SCHEDULE

Description and Location of Premises or Classification:

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, coverage C. MEDICAL PAYMENTS (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

**8.** Expenses incurred by the Insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.



Copyright, Insurance Services Office, Inc., 1992

CL 669
(10-93)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 21 49 10 93

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective February 20, 2003 12:01 A.M. standard time | Policy No. GLO 000-3046 |
|---|---|
| Named Insured Hoyt Corporation, et al. | Countersigned by |

(Authorized Representative)

Exclusion f. under paragraph 2., Exclusions of COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages) is replaced by the following:

This insurance does not apply to:

f.  (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

  (2) Any loss, cost or expense arising out of any:

   (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.



Copyright, Insurance Services Office, Inc., 1992



COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion i. under Paragraph 2., **Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:

2. **Exclusions**

   This insurance does not apply to:

   i. **War Or Terrorism**

   "Bodily injury" or "property damage" arising, directly or indirectly, out of:

   (1) War, including undeclared or civil war; or

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

   (4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

   regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

   However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

   (1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

   (2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   (a) Physical injury that involves a substantial risk of death; or

   (b) Protracted and obvious physical disfigurement; or

   (c) Protracted loss of or impairment of the function of a bodily member or organ; or

   (3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

   (4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

© ISO Properties, Inc., 2001



(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

**War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

© ISO Properties, Inc., 2001

CG 21 69 01 02



(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. Exclusion h. under Paragraph 2., **Exclusions** of **Section I – Coverage C – Medical Payments** does not apply.

D. The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

1.  That involve the following or preparation for the following:

    a.  Use or threat of force or violence; or

    b.  Commission or threat of a dangerous act; or

    c.  Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2.  When one or both of the following applies:

    a.  The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    b.  It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

© ISO Properties, Inc., 2001

 

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 22 43 01 96

# EXCLUSION—ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages) and paragraph 2., Exclusions of COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY (Section I—Coverages):

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.



Copyright, Insurance Services Office, Inc., 1994

CL 843
(1-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## GENERAL CHANGE ENDORSEMENT

Attaching to and forming a part of

| | | | |
|---|---|---|---|
| Policy # | GLO 000-3046 | Effective Date of Policy | February 20, 2003 |
| Endorsement # | 1 | Effective Date of Endorsement | February 20, 2003 |
| Named Insured | Hoyt Corporation, et al. | | |

| | | | |
|---|---|---|---|
| **Additional Premium** | $ N/A | **Return Premium** | $ N/A |

It is agreed the following change is made in this policy:

- ☐ Name of Assured is amended to read as shown below.
- ☐ Premium rate amended as shown below.
- ☐ Item(s) listed below added to schedule.
- ☐ Description of scheduled items amended as shown below.
- ☐ Location - Address of Insured amended to read as shown below.
- ☒ Policy conditions amended as shown below.
- ☐ Item(s) listed below deleted from schedule.
- ☐ Description of property insured corrected to read as shown below.

It is agreed that Form GO-38 is added to the policy.  (See attached).

All other terms and conditions of this policy remain unchanged.

GO-0039 (06/96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## NAMED INSURED ENDORSEMENT

In consideration of the premium charged, it is agreed that Section II – Who is an Insured of the Coverage Form is amended to include:

> Hoyt Corp.
> H. R. Hoyt, Inc.
> Forge Road Realty Trust
> Hoyt Manufacturing Corporation
> Westport Environmental System Limited Partnership
> Hoyt Environmental Corp.
> Westport Environmental Corp.
> Olinger Technologies

GO-0038 (06/96)

**COMMERCIAL GENERAL LIABILITY POLICY**

| No. GLO 000-3656 |
|---|
| GLO 000-3046 |
| REPLACEMENT OF NUMBER |

STOCK COMPANY

# **T**

# TUDOR
## INSURANCE COMPANY
### KEENE, NEW HAMPSHIRE

400 PARSON'S POND DRIVE
FRANKLIN LAKES, NJ 07412-2600

## DECLARATIONS
**Named Insured** and Mailing Address: (No., Street, City, State, Zip Code)

**Hoyt Corporation**
**251 Forge Road**
**Westport, MA 02790**

The **named insured** is:

☐ Individual
☐ Partnership
☒ Corporation
☐ Other _____

Policy Period: (Mo./Day/Yr.)

From                          to                     12:01 A.M., standard time at your mailing
                                                     address shown above.

**February 20, 2004        February 20, 2005**

Business Description: Manufacturer of Commercial Washers & Dryers

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000 |
| Products - Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Fire Damage Limit | $ | 50,000 Any One Fire |
| Medical Expense Limit | $ | EXCLUDED Any One Person |

### PREMIUM

| | | | Rate | | Advance Premium | |
|---|---|---|---|---|---|---|
| Classification | Code No. | Premium Basis | Pr/Co | All Other | Pr/Co | All Other |

See Earned Premium and Composite Rate Endorsement (GO-0011).

Advance Premium $

### FORMS AND ENDORSEMENTS

| Forms and Endorsements applying to this policy and attached at time of issue: | TOTAL ADVANCE PREMIUM |
|---|---|
| Common Policy Conditions (GO-0026), Nuclear Energy Exclusion (GO-0027), GO-0006 (06/96), GO-0011 (06/96), GO-0012 (06/96), GO-0019 (06/96), GO-0038 (06/96), GO-0064 (06/98), GO-0075 (01/97), GO-0076 (03/01), GO-0078 (03/01), GO-0079 (03/01), GO-0084 (08/01), GO-0098 (11/03), CG-0001 (07/98), CG-2010 (10/93), CG-2015 (11/88), CG-2135 (10/93), CG 2149 (10/93), CG-2169 (01/02), CG-2173 (12/02), CG-2243 (01/96). | $        52,500 |

Countersigned:

By _Donna M. Hovern_

Assistant Vice President
Authorized Representative

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

02/20/04  LR

GO-0028 (Ed. 6/96)

# COMMON POLICY CONDITIONS

## All Coverage Forms included in this policy are subject to the following conditions.

**A.  CANCELLATION**

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b.  30 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation. The policy period will end at 12:01 a.m. on that date.

5.  If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.  CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C.  EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D.  INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1.  Make inspections and surveys at any time;

2.  Give you reports on the conditions we find; and

3.  Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1.  Are safe or healthful; or

2.  Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E.  PREMIUMS**

The first Named Insured shown in the Declarations:

1.  Is responsible for the payment of all premiums; and

2.  Will be the payee for any return premiums we pay.

**F.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by **our** authorized representative.

*Stephen A Cohen*
      *Secretary*

*Andrew S Frazier*
      *President*

GO-0026 (06/96)

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*
*Copyright, Insurance Services Office, Inc. 1985.*

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)
This endorsement modifies the provisions of this policy.

It is agreed that:

I.  This Policy does not apply:

   A.  Under any Liability Coverage, to **bodily injury** or **property damage**

      1.  with respect to which an Insured under this Policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

      2.  resulting from the **hazardous properties** of **nuclear material** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by an person or organization.

   C.  Under any Liability Coverage, to **bodily injury** or **property damage** resulting from the **hazardous properties** of **nuclear material**, if

      1.  the **nuclear material** (a) is at any **nuclear facility** owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

      2.  the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

      3.  the **bodily injury** or **property damage** arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to **property damage** to such **nuclear facility** and any property thereat.

II.  As used in this endorsement:

   "**hazardous properties**" include radioactive, toxic or explosive properties;

   "**nuclear material**" means **source material, special nuclear material** or **byproduct material**;

   "**source material**," "**special nuclear material**," and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

   "**waste**" means any waste material (1) containing **by product material** and (2) resulting from the operation by any person or organization of any **nuclear facility** included within the definition of **nuclear facility** under paragraph (a) or (b) thereof;

   "**Nuclear facility**" means

   (a)  any **nuclear reactor**,

   (b)  any equipment or device designed or used (1) **separating the isotopes** of uranium or plutonium, (2) processing or utilizing **spent fuel**, or (3) handling, processing or packaging **waste**,

   (c)  any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**,

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   "**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable materials;

   "**property damage**" includes all forms of radioactive contamination of property.

*Includes copyrighted material of Insurance Services Office, with its permission.*
*Copyright, Insurance Service Office, Inc. 1985.*

GO-0027 (06/96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## DEDUCTIBLE ENDORSEMENT
## <u>DEFENSE COSTS AND EXPENSES CONTRIBUTING TO DEDUCTIBLE LIMIT</u>

In consideration of the premium charged, it is agreed that such coverage as is afforded by this policy shall be in excess of $10,000 deductible each "occurrence," for any "occurrence" that would otherwise be covered on a primary basis.

Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal Injury Liability and Advertising Injury Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount stated above as applicable to such coverages. The limits of insurance applicable to each "occurrence" for such coverages will be reduced by the amount of such deductible. Aggregate limits for such coverages shall not be reduced by the application of such deductible amount.

The deductible amount stated above applies under Bodily Injury Liability, Property Damage Liability, Personal Injury Liability and Advertising Injury Liability Coverage combined to all damages because of "bodily injury," "property damage," "personal injury" and "advertising injury" as the result of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages because of that "occurrence."

All costs and expenses payable under the Supplementary Payments section of the Coverage Form shall contribute to the exhaustion of the stated deductible amount and such costs and expenses shall be entirely borne by the insured.

The terms of this insurance, including those with respect to:

    **(a)**    Our right and duty to defend any "suits" seeking damages; and

    **(b)**    Your duties in the event of an "occurrence," "claim," or "suit";

apply irrespective of the application of the deductible amount.

It is further agreed that the Company shall not be obligated to advance any amounts within the deductible that the insured may be legally obligated to pay. However, we may pay any part or all of the deductible amount to effect settlement of any "claim," "suit" or expense and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

GO-0006 (06-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## EARNED PREMIUM AND COMPOSITE RATE

In consideration of Tudor Insurance Company's acceptance of this insurance, the Named Insured hereby agrees that the minimum earned premium(s) due for this policy shall be calculated in accordance with the following:

1.  The minimum earned premium due if this policy remains in effect for 90 days or less shall be twenty-five percent (25%) of the amount entered as ADVANCE PREMIUM on the Declarations page of this policy.

2.  In the event of cancellation of this policy by the Named Insured after this policy has been in effect for more than 90 days, the return premium due, if any, shall be computed at a rate equal to ninety percent (90%) of the pro-rata unearned policy premium, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

3.  Failure by the Named Insured to remit premium payments when due shall be considered a request by the Named Insured for the Company to cancel this policy, and the minimum earned premium due the Company shall be computed in accordance with either paragraph 1 or 2 above, as the case may be.

4.  In the event of cancellation of this policy by the Company for reasons other than nonpayment of premium, the earned premium for this policy shall be computed on a pro-rata basis, subject, however, to final premium adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy.

5.  The premium entered on the Declarations page of this policy as ADVANCE PREMIUM is a provisional premium only and is subject to adjustment in accordance with our rules, rates and the Premium Audit provisions of this policy. Premium adjustments effected as a result of premium audits will be done after the policy is no longer in effect but may be done by the Company while the policy is in effect. Premium Audit Adjustment calculations will be made to determine additional premiums only. The Named Insured agrees that there will be no downward adjustments of the ADVANCE PREMIUM resulting from the Premium Audit provisions of this policy.

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## SERVICE OF "SUIT" CLAUSE

It is agreed that service of process in any "suit" on this policy against Tudor Insurance Company may be made upon the highest one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the state or commonwealth wherein this policy is delivered or issued. The one in authority bearing the title Commissioner, Director, or Superintendent of Insurance of the state or commonwealth where this policy is delivered is hereby authorized and directed to accept service of process on behalf of this Company in any such "suit"; provided such Commissioner, Director, or Superintendent has a procedure for forwarding "suits" to insurance companies by registered or certified mail and agrees to abide by such procedure by mailing via certified mail all documents so served to Mr. Andrew Frazier, Tudor Insurance Company, 400 Parson's Pond Drive, Franklin Lakes, New Jersey 07417-2600.

It is further agreed that the Insured shall, by registered mail, send to Mr. Andrew Frazier, Tudor Insurance Company, 400 Parson's Pond Drive, Franklin Lakes, New Jersey 07417-2600, a copy of all documents relating to the service of process and "suit" as the Insured has delivered to the highest one in authority of the Insurance Department of the state in which the "suit" has been instituted.

GO-0019 (06-96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## NAMED INSURED ENDORSEMENT

In consideration of the premium charged, it is agreed that Section II - Who is an Insured of the Coverage Form is amended to include:

> Hoyt Corp.
> H.R. Hoyt, Inc.
> Forge Road Realty Trust
> Hoyt Manufacturing Corporation
> Westport Environmental System Limited Partnership
> Olinger Technologies

GO-0038 (06/96)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## AIRCRAFT PRODUCTS AND GROUNDING EXCLUSION ENDORSEMENT

It is agreed that this policy shall not apply to any liability arising out of "Aircraft Products and Completed Operations" or reliance upon any representation or warranty made with respect thereto, nor to any liability arising out of the "Grounding" of any aircraft.

"Aircraft Products and Completed Operations" means: (1) Aircraft (including missiles or spacecraft and ground support or control equipment used therewith) and any other goods or products manufactured, sold, handled or distributed by any Insured for any services provided or recommended by any Insured or by others trading under his name for use in the manufacture, repair, operation, maintenance or use of any aircraft, and (2) any articles, furnished by any Insured and installed in aircraft or used in connection with aircraft or for spare parts for the aircraft, including ground handling tools and equipment, and also means training aids, instruction manuals, blueprints, engineering or other data, engineering or other advice, and labor relating to such aircraft or articles.

"Grounding" shall mean the withdrawal of one or more aircraft from the flight operations or the imposition of speed, passenger, or load restriction on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft of any part thereof sold, handled or distributed by any Insured or manufactured, assembled or processed by any other person or organization according to the specifications, plans, suggestions, orders, or drawings of any Insured whether such aircraft so withdrawn are owned or operated by the same or different persons, organization, or corporation.

GO-0064 (06-98)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## LEAD CONTAMINATION EXCLUSION
### (CONTRACTING)  (Except NH)

This insurance does not apply to:

(a)     "Bodily Injury" arising out of the ingestion, inhalation or absorption of lead in any form;

(b)     "Property Damage" arising from any form of lead;

(c)     Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

(d)     Any loss, cost or expense arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

All other terms and conditions remain unchanged.

GO-0075 (06/02)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### EXCLUSION FOR CERTAIN BUSINESS/MARKETING CONDUCT

In consideration of the premium charged, it is hereby understood and agreed that the insurance under this policy DOES NOT APPLY to claims and/or liability arising out of the following conduct in the course of any insured's business and/or marketing activities:

(1)     Any invasion of, infringement or intrusion upon, or interference with any person's right of privacy or publicity, including but not limited to presentation of such person in a false light, unwarranted or wrongful publicity, public disclosure of private facts, and commercial appropriation or use of such person's name, signature, photographic license, likeness and/or statements by or about him or her or attributed to him or her without such person's permission, and

(2)     Any misappropriation, infringement, or unauthorized use of any name, trademark, copyright, trade name, trade dress, service mark or service name, advertising idea, style of doing business, title, slogan, format, idea, character, character name, characterization, plot, musical composition, performance, logo, art work, graphic representation, photographic, or other similar concept, practice, or design.

All other terms and conditions remain unchanged.

GO-0076 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## EMPLOYMENT RELATED PRACTICES EXCLUSION

This insurance does not apply to "Bodily Injury" arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(4) Consequential "bodily injury" as a result of (1) through (3) above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

GO-0078 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## ASBESTOS EXCLUSION

This insurance does not apply to any liability for "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish and mental injury at any time arising out the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of such "property damage," "bodily injury," sickness, disease, occupational disease, disability, shock, death, mental anguish or mental injury at any time as a result of the manufacture of, mining of, use of, sales of, installation of, distribution of, removal of, encapsulation of or exposure to asbestos products, asbestos fibers or asbestos dust.

GO-0079 (03/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

## MOLD, SPORES AND/OR FUNGUS LIABILITY EXCLUSION

This insurance does not apply to "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" for which any "named insured" or "insured" under this policy may be held liable arising out of the actual or threatened occurrence, growth, release, transmission, migration, dispersal or exposure to "Mold," "Spores" and/or "Fungus;"

(a)   including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any actual or threatened exposure to, inhalation, absorption or ingestion of, or physical contract with "Mold," "Spores" and/or "Fungus;"

(b)   including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any actual or threatened "Mold," "Spores" and/or "Fungus;" upon any real property or personal property, product or work, premises, site or location, or any other tangible property, of any "named insured" or "insured" or any other person(s) or organization(s), located anywhere in the world;

(c)   including, but not limited to, "bodily injury," "property damage," "personal injury" or "advertising injury" resulting from any loss, cost or expense for any testing, monitoring, clean-up, treatment or removal, or neutralization of "Mold," "Spores" and/or "Fungus;"

"Mold," "Spores" and/or "Fungus means any mold, spores and/or fungus of any type or nature whatsoever that can cause or threaten harm to any living organism (including human health or human welfare, or the health or welfare of any animal or plant) or can cause or threaten physical damage, deterioration, loss of use, and/or loss of value or marketability, to any tangible property whatsoever. This includes, but is not limited to, any type(s) of mold, spores and/or fungus that are harmful or potentially harmful to health or welfare (such as Stachbotrys and others), or that are damaging or potentially damaging to tangible property (such as wet or dry rot, mildew and others) or that can otherwise cause or threaten to cause "Bodily Injury," "Property Damage," "Personal Injury" or "Advertising Injury" of any kind whatsoever.

GO-0084 (08/01)

# ENDORSEMENT

This endorsement, issued by **TUDOR INSURANCE COMPANY**, forms a part of the policy to which it is attached.

### CRYSTALLINE SILICA EXCLUSION

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury" or "medical payments" arising out of or related to any alleged, threatened or actual exposure to or inhalation of "crystalline silica", or arising out of or related to any alleged failure to prevent, limit or reduce exposure to or inhalation of "crystalline silica".

"Crystalline silica" means the mineral common in the earth's crust commonly referred to as free silica, respirable silica, or silicon dioxide ($SiO_2$), and includes alpha-quartz silica, cristobalite silica, or tridymite silica.

All other terms and conditions remain unchanged.

GO-0098 (11/03)

CG 00 01 07 98

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II—Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V—Definitions.

## SECTION I—COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    **(1)** The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

    **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverage A and B.

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

    **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    **(2)** The "bodily injury" or "property damage" occurs during the policy period.

  **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

  **a. Expected Or Intended Injury**

  "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

  **b. Contractual Liability**

  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    **(1)** That the insured would have in the absence of the contract or agreement; or

    **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

  **c. Liquor Liability**

  "Bodily injury" or "property damage" for which any insured may be held liable by reason of:





**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or

  **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

    **(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    **(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

  **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    **(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other op-



erating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a government authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

05/14/2003 04:36 PM




(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III—Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product"; .

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### o. Personal And Advertising Injury

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III—Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

CL 137 (7-98)

05/14/2003 04:36 PM

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. "Personal and advertising injury":

   (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

   (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   (4) Arising out of a criminal act committed by or at the direction of any insured;

   (5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

   (6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

   (7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

   (8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

   (9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section; or

   (10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

b. Any loss, cost or expense arising out of any:

   (1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

   (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

   (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury"

CL 137 (7-98)

05/14/2003 04:36 PM



are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS—COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All costs taxed against the insured in the "suit".

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the

liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of Section I—Coverage A—Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damages" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary liti-

Page 6 of 13

CL 137 (7-98)

05/14/2003 04:36 PM

gation expenses as Supplementary Payments ends when:

    **a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

    **b.** The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

## SECTION II—WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

    **a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

    **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

        **(1)** "Bodily injury" or "personal and advertising injury":

            **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

            **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a

consequence of paragraph (1)(a) above;

            **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

            **(d)** Arising out of his or her providing or failing to provide professional health care services.

        **(2)** "Property damage" to property:

            **(a)** Owned, occupied or used by,

            **(b)** Rented to, in the, care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    **b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

    **c.** Any person or organization having proper temporary custody of your property if you die, but only:

        **(1)** With respect to liability arising out of the maintenance or use of that property; and

        **(2)** Until your legal representative has been appointed.

    **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    **a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

    **b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

CL 137 (7-98)

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

    b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

    c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III—LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under Coverage C;

    b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under Coverage A; and

    b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b. If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c. You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal pa-

---

05/14/2003 04:36 PM

pers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or

similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion g. of Section I — Coverage A—Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method Of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

 

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V—DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

05/14/2003 04:36 PM

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

CL 137 (7-98)

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and

waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall



be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

    **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(1)** You;

        **(2)** Others trading under your name; or

        **(3)** A person or organization whose business or assets you have acquired; and

    **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **b.** The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

    **a.** Work or operations performed by you or on your behalf; and

    **b.** Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

    **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **b.** The providing of or failure to provide warnings or instructions.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

CG 20 10 10 93

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS (FORM B)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| February 20, 2004 | GLO 000-3656 |
| Named Insured | Countersigned by |
| Hoyt Corporation | |

**SCHEDULE**

**Name of Person or Organization:**

See Below

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

Any Person or organization that is an owner of Real Property or Personal Property on which you are performing operations, or a contractor on whose behalf you are performing operations, and only at the specific written request of such person or organization to you, wherein such request is made prior to commencement of operations, and for which a certificate of insurance naming such person or organization as additional insured is on file with Tudor Insurance Company.

Copyright, Insurance Services Office, Inc.,  1992    **Page 1 of 1**    ◻

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization (Vendor):** All vendors of the named insured.

**Your Products:**

All products manufactured or sold by the Named Insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

**1.** The insurance afforded the vendor does not apply to:

  **a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

  **b.** Any express warranty unauthorized by you;

  **c.** Any physical or chemical change in the product made intentionally by the vendor;

  **d.** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

  **e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

  **f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

  **g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

      Copyright, Insurance Services Office, Inc., 1986, 1988      **Page 1 of 1**    □

POLICY NUMBER:

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 93**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| FEbruary 20, 2004 | GLO 000-3656 |
| Named Insured | Countersigned by |
| Hoyt Corporation | |

## SCHEDULE

**Description and Location of Premises or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, Coverage C. MEDICAL PAYMENTS (Section I) does not apply and none of the references to it in the Coverage Part apply.

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

**8.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

**CG 21 35 10 93**          Copyright, Insurance Services Office, Inc., 1992          **Page 1 of 1**    □

COMMERCIAL GENERAL LIABILITY
CG 21 49 10 93

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| February 20, 2004 | GLO 000-3656 |
| Named Insured | Countersigned by |
| Hoyt Corporation | |

Exclusion **f.** under paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is replaced by the following:

This insurance does not apply to:

**f.(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**i. War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(a)** Physical injury that involves a substantial risk of death; or

**(b)** Protracted and obvious physical disfigurement; or

**(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

CG 21 69 01 02                    © ISO Properties, Inc., 2001                    Page 1 of 3    □

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

**(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

**(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

**(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**(a)** Physical injury that involves a substantial risk of death; or

**(b)** Protracted and obvious physical disfigurement; or

**(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

**(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

  © ISO Properties, Inc., 2001  CG 21 69 01 02  □

**(5)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2),** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I – Coverage C – Medical Payments** does not apply.

**D.** The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:

    **a.** Use or threat of force or violence; or

    **b.** Commission or threat of a dangerous act; or

    **c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

    **a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

 © ISO Properties, Inc., 2001

COMMERCIAL GENERAL LIABILITY
CG 21 73 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of "a certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

**a.** The act resulted in aggregate losses in excess of $5 million; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COMMERCIAL GENERAL LIABILITY
CG 22 43 01 96

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph **2.,** Exclusions of COVERAGE A – BODILY INJURY AND PROP-
ERTY DAMAGE LIABILITY (Section **I** – Coverages) and paragraph **2.,** Exclusions of COVERAGE B – PER-
SONAL AND ADVERTISING INJURY LIABILITY (Section **I** – Coverages):

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising
out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor
who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys,
   field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

EXHIBIT C



## GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS
—o—
### DEPARTMENT OF PLANNING AND NATURAL RESOURCES
45 Mars Hill, Frederiksted
St. Croix, U.S. Virgin Islands 00840-4474

Telephone: (340) 773-1082
FAX: (340) 773-1716

September 1, 2004

Hoyt Corporation
c/o Bob Rosenthal
15 Glastonbury Oval
Newton, MA 02486

RE:    HOYT CORPORATION
       Natural Resource Damages — 60-Day Notice
       Former Laga Facility #386, Estate Anna's Retreat
       St. Thomas, U.S. Virgin Islands

Dear Mr. Rosenthal:

This letter is to notify you as representative of Hoyt Corporation ("Hoyt") that Hoyt is potentially responsible for damages to natural resources resulting from hazardous substances, pollutants and/or contaminants that have been released into the environment from the former Laga facility ("Laga Facility").

You and Hoyt are also hereby notified that the Territory of the United States Virgin Islands (the "Territory") presently intends to bring suit against Hoyt to recover natural resource damages pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. §§ 9601-9675, and other applicable Federal and/or Territorial law. This notice is provided to you pursuant to CERCLA § 113(g)(1), 42 U.S.C. § 9613(g)(1). A copy of this statutory provision is enclosed with this letter.

As Commissioner of the Department of Planning and Natural Resources, I have been appointed pursuant to CERCLA § 107(f), 42 U.S.C. § 9607(f), and 40 C.F.R. Subpart G, by Governor Charles A. Turnbull as the sole Trustee (the "Trustee") for all resources belonging to, managed by, controlled by or appertaining to resources in the Territory under the Territory's jurisdiction, and any other applicable Territorial or Federal law. This notice is sent to you by the Trustee, whose trust resources are believed to have been damaged as a result of injury to, destruction of, or loss of such trust resources.

PAGE 2
September 1, 2004
NATURAL RESOURCE DAMAGES, 60-DAY NOTICE LETTER
HOYT CORPORATION

The natural resources that are of concern to the Trustee include those that have been exposed to hazardous substances, pollutants and/or contaminants that were released from the Laga Facility located at No. 386, Estate Anna's Retreat, St. Thomas, U.S. Virgin Islands.

Based upon evidence currently available, the Trustee has a reasonable basis to conclude that releases of hazardous substances, pollutants and/or contaminants from the Laga Facility contributed significantly to the contamination of areas within its trusteeship. Hoyt may be liable under CERCLA § 107(a), 42 U.S.C. § 9607(a), as well as other applicable Federal and/or Territorial law, jointly and severally, for the full cost of restoration, replacement or acquisition of natural resources injured by the hazardous substances, pollutants and/or contaminants.

If Hoyt believes that it has legal or factual information supporting the conclusion that it is not responsible for these damages, provide that information as soon as possible so that it can be considered before the Territory files suit. The Trustee has retained the services of the Law Offices of John K. Dema, P.C. to assist the Attorney General in this matter. Any contact by you or a representative of Hoyt in this matter may be directed in writing to John K. Dema, Esquire, at the Law Offices of John K. Dema, P.C., 1236 Strand Street, Suite 103, Christiansted, St. Croix, U.S. Virgin Islands 00820-5008, or by telephone at (340) 773-6142.

Sincerely,

Dean C. Plaskett, Esq.
Commissioner/Trustee for Natural Resources

Encl.: CERCLA § 113(g)(1), 42 U.S.C. § 9613(g)(1)

WAIS Document Retrieval                                                    7/13/04 10:02 A

From the U.S. Code Online via GPO Access
[wais.access.gpo.gov]
[Laws in effect as of January 2, 2001]
[Document not affected by Public Laws enacted between
  January 2, 2001 and December 19, 2002]
[CITE: 42USC9613]

                TITLE 42--THE PUBLIC HEALTH AND WELFARE
    CHAPTER 103--COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND
                              LIABILITY
      SUBCHAPTER I--HAZARDOUS SUBSTANCES RELEASES, LIABILITY, COMPENSATION
    Sec. 9613. Civil proceedings

    (a) Review of regulations in Circuit Court of Appeals of the United
        States for the District of Columbia

        Review of any regulation promulgated under this chapter may be had
    upon application by any interested person only in the Circuit Court of
    Appeals of the United States for the District of Columbia. Any such
    application shall be made within ninety days from the date of
    promulgation of such regulations. Any matter with respect to which
    review could have been obtained under this subsection shall not be
    subject to judicial review in any civil or criminal proceeding for
    enforcement or to obtain damages or recovery of response costs.

    (b) Jurisdiction; venue

        Except as provided in subsections (a) and (h) of this section, the
    United States district courts shall have exclusive original jurisdiction
    over all controversies arising under this chapter, without regard to the
    citizenship of the parties or the amount in controversy. Venue shall lie
    in any district in which the release or damages occurred, or in which
    the defendant resides, may be found, or has his principal office. For
    the purposes of this section, the Fund shall reside in the District of
    Columbia.

    (c) Controversies or other matters resulting from tax collection or tax
        regulation review

        The provisions of subsections (a) and (b) of this section shall not
    apply to any controversy or other matter resulting from the assessment
    of collection of any tax, as provided by subchapter II \1\ of this
    chapter, or to the review of any regulation promulgated under title 26.
    ---------------------------------------------------------------------------
        \1\ See References in Text note below.
    ---------------------------------------------------------------------------

    (d) Litigation commenced prior to December 11, 1980

        No provision of this chapter shall be deemed or held to moot any
    litigation concerning any release of any hazardous substance, or any
    damages associated therewith, commenced prior to December 11, 1980.

    (e) Nationwide service of process

        In any action by the United States under this chapter, process may
    be served in any district where the defendant is found, resides,

03/29/2004    15:45    THE FEITELBERG CO. → 14014319379                    NO.855   P007

transacts business, or has appointed an agent for the service of
process.

(f) Contribution

### (1) Contribution

Any person may seek contribution from any other person who is
liable or potentially liable under section 9607(a) of this title,
during or following any civil action under section 9606 of this
title or under section 9607(a) of this title. Such claims shall be
brought in accordance with this section and the Federal Rules of
Civil Procedure, and shall be governed by Federal law. In resolving
contribution claims, the court may allocate response costs among
liable parties using such equitable factors as the court determines
are appropriate. Nothing in this subsection shall diminish the right
of any person to bring an action for contribution in the absence of
a civil action under section 9606 of this title or section 9607 of
this title.

### (2) Settlement

A person who has resolved its liability to the United States or
a State in an administrative or judicially approved settlement shall
not be liable for claims for contribution regarding matters
addressed in the settlement. Such settlement does not discharge any
of the other potentially liable persons unless its terms so provide,
but it reduces the potential liability of the others by the amount
of the settlement.

### (3) Persons not party to settlement

(A) If the United States or a State has obtained less than
complete relief from a person who has resolved its liability to the
United States or the State in an administrative or judicially
approved settlement, the United States or the State may bring an
action against any person who has not so resolved its liability.

(B) A person who has resolved its liability to the United States
or a State for some or all of a response action or for some or all
of the costs of such action in an administrative or judicially
approved settlement may seek contribution from any person who is not
party to a settlement referred to in paragraph (2).

(C) In any action under this paragraph, the rights of any person
who has resolved its liability to the United States or a State shall
be subordinate to the rights of the United States or the State. Any
contribution action brought under this paragraph shall be governed
by Federal law.

(g) Period in which action may be brought

### (1) Actions for natural resource damages

Except as provided in paragraphs (3) and (4), no action may be
commenced for damages (as defined in section 9601(6) of this title)
under this chapter, unless that action is commenced within 3 years
after the later of the following:
(A) The date of the discovery of the loss and its connection
with the release in question.
(B) The date on which regulations are promulgated under

section 9651(c) of this title.

With respect to any facility listed on the National Priorities List (NPL), any Federal facility identified under section 9620 of this title (relating to Federal facilities), or any vessel or facility at which a remedial action under this chapter is otherwise scheduled, an action for damages under this chapter must be commenced within 3 years after the completion of the remedial action (excluding operation and maintenance activities) in lieu of the dates referred to in subparagraph (A) or (B). In no event may an action for damages under this chapter with respect to such a vessel or facility be commenced (i) prior to 60 days after the Federal or State natural resource trustee provides to the President and the potentially responsible party a notice of intent to file suit, or (ii) before selection of the remedial action if the President is diligently proceeding with a remedial investigation and feasibility study under section 9604(b) of this title or section 9620 of this title (relating to Federal facilities). The limitation in the preceding sentence on commencing an action before giving notice or before selection of the remedial action does not apply to actions filed on or before October 17, 1986.

### (2) Actions for recovery of costs

An initial action for recovery of the costs referred to in section 9607 of this title must be commenced--
    (A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and
    (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action brought under this subparagraph.

In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

### (3) Contribution

No action for contribution for any response costs or damages may be commenced more than 3 years after--
    (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
    (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or

9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

### (4) Subrogation

No action based on rights subrogated pursuant to this section by reason of payment of a claim may be commenced under this subchapter more than 3 years after the date of payment of such claim.

### (5) Actions to recover indemnification payments

Notwithstanding any other provision of this subsection, where a payment pursuant to an indemnification agreement with a response action contractor is made under section 9619 of this title, an action under section 9607 of this title for recovery of such indemnification payment from a potentially responsible party may be brought at any time before the expiration of 3 years from the date on which such payment is made.

### (6) Minors and incompetents

The time limitations contained herein shall not begin to run--
(A) against a minor until the earlier of the date when such minor reaches 18 years of age or the date on which a legal representative is duly appointed for such minor, or
(B) against an incompetent person until the earlier of the date on which such incompetent's incompetency ends or the date on which a legal representative is duly appointed for such incompetent.

### (h) Timing of review

No Federal court shall have jurisdiction under Federal law other than under section 1332 of title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
(1) An action under section 9607 of this title to recover response costs or damages or for contribution.
(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
(3) An action for reimbursement under section 9606(b)(2) of this title.
(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

### (i) Intervention

In any action commenced under this chapter or under the Solid Waste

· · Disposal Act [42 U.S.C. 6901 et seq.] in a court of the United States,
any person may intervene as a matter of right when such person claims an
interest relating to the subject of the action and is so situated that
the disposition of the action may, as a practical matter, impair or
impede the person's ability to protect that interest, unless the
President or the State shows that the person's interest is adequately
represented by existing parties.

(j) Judicial review

### (1) Limitation

In any judicial action under this chapter, judicial review of
any issues concerning the adequacy of any response action taken or
ordered by the President shall be limited to the administrative
record. Otherwise applicable principles of administrative law shall
govern whether any supplemental materials may be considered by the
court.

### (2) Standard

In considering objections raised in any judicial action under
this chapter, the court shall uphold the President's decision in
selecting the response action unless the objecting party can
demonstrate, on the administrative record, that the decision was
arbitrary and capricious or otherwise not in accordance with law.

### (3) Remedy

If the court finds that the selection of the response action was
arbitrary and capricious or otherwise not in accordance with law,
the court shall award (A) only the response costs or damages that
are not inconsistent with the national contingency plan, and (B)
such other relief as is consistent with the National Contingency
Plan.

### (4) Procedural errors

In reviewing alleged procedural errors, the court may disallow
costs or damages only if the errors were so serious and related to
matters of such central relevance to the action that the action
would have been significantly changed had such errors not been made.

(k) Administrative record and participation procedures

### (1) Administrative record

The President shall establish an administrative record upon
which the President shall base the selection of a response action.
The administrative record shall be available to the public at or
near the facility at issue. The President also may place duplicates
of the administrative record at any other location.

### (2) Participation procedures

(A) Removal action

The President shall promulgate regulations in accordance
with chapter 5 of title 5 establishing procedures for the

appropriate participation of interested persons in the
development of the administrative record on which the President
will base the selection of removal actions and on which judicial
review of removal actions will be based.

(B) Remedial action

The President shall provide for the participation of
interested persons, including potentially responsible parties,
in the development of the administrative record on which the
President will base the selection of remedial actions and on
which judicial review of remedial actions will be based. The
procedures developed under this subparagraph shall include, at a
minimum, each of the following:

(i) Notice to potentially affected persons and the
public, which shall be accompanied by a brief analysis of
the plan and alternative plans that were considered.

(ii) A reasonable opportunity to comment and provide
information regarding the plan.

(iii) An opportunity for a public meeting in the
affected area, in accordance with section 9617(a)(2) of this
title (relating to public participation).

(iv) A response to each of the significant comments,
criticisms, and new data submitted in written or oral
presentations.

(v) A statement of the basis and purpose of the selected
action.

For purposes of this subparagraph, the administrative record
shall include all items developed and received under this
subparagraph and all items described in the second sentence of
section 9617(d) of this title. The President shall promulgate
regulations in accordance with chapter 5 of title 5 to carry out
the requirements of this subparagraph.

(C) Interim record

Until such regulations under subparagraphs (A) and (B) are
promulgated, the administrative record shall consist of all
items developed and received pursuant to current procedures for
selection of the response action, including procedures for the
participation of interested parties and the public. The
development of an administrative record and the selection of
response action under this chapter shall not include an
adjudicatory hearing.

(D) Potentially responsible parties

The President shall make reasonable efforts to identify and
notify potentially responsible parties as early as possible
before selection of a response action. Nothing in this paragraph
shall be construed to be a defense to liability.

(l) Notice of actions

Whenever any action is brought under this chapter in a court of the
United States by a plaintiff other than the United States, the plaintiff
shall provide a copy of the complaint to the Attorney General of the
United States and to the Administrator of the Environmental Protection

Fax Server            9/__/2004 9:29    PAGE 011/011    Fax Server

09/29/2004    15:45    THE FEITELBERG CO. → 14014319379                    NO.855    ᴾ011

Agency.

    (Pub. L. 96-510, title I, Sec. 113, Dec. 11, 1980, 94 Stat. 2795; Pub.
L. 99-499, title I, Sec. 113, Oct. 17, 1986, 100 Stat. 1647; Pub. L. 99-
514, Sec. 2, Oct. 22, 1986, 100 Stat. 2095.)

### References in Text

    Subchapter II of this chapter, referred to in subsec. (c), was in
the original ``title II of this Act'', meaning title II of Pub. L. 96-
510, Dec. 11, 1980, 94 Stat. 2796, known as the Hazardous Substance
Response Revenue Act of 1980, which enacted subchapter II of this
chapter and sections 4611, 4612, 4661, 4662, 4681, and 4682 of Title 26,
Internal Revenue Code. Sections 221 to 223 and 232 of Pub. L. 96-510,
which were classified to sections 9631 to 9633 and 9641 of this title,
comprising subchapter II of this chapter, were repealed by Pub. L. 99-
499, title V, Secs. 514(b), 517(c)(1), Oct. 17, 1986, 100 Stat. 1767,
1774. For complete classification of title II to the Code, see Short
Title of 1980 Amendment note set out under section 1 of Title 26 and
Tables.
    The Federal Rules of Civil Procedure, referred to in subsec. (f)(1),
are set out in the Appendix to Title 28, Judiciary and Judicial
Procedure.
    The Solid Waste Disposal Act, referred to in subsec. (i), is title
II of Pub. L. 89-272, Oct. 20, 1965, 79 Stat. 997, as amended generally
by Pub. L. 94-580, Sec. 2, Oct. 21, 1976, 90 Stat. 2795, which is
classified generally to chapter 82 (Sec. 6901 et seq.) of this title.
For complete classification of this Act to the Code, see Short Title
note set out under section 6901 of this title and Tables.

### Amendments

    1986--Subsec. (b). Pub. L. 99-499, Sec. 113(c)(1), substituted
``subsections (a) and (h)'' for ``subsection (a)''.
    Subsec. (c). Pub. L. 99-514 substituted ``Internal Revenue Code of
1986'' for ``Internal Revenue Code of 1954'', which for purposes of
codification was translated as ``title 26'' thus requiring no change in
text.
    Subsecs. (a) to (l). Pub. L. 99-499, Sec. 113(a), (b), (c)(2), added
subsecs. (a) to (l).

### Section Referred to in Other Sections

    This section is referred to in sections 9607, 9659 of this title.